# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

## CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced.  Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT
CAPTION: In re: Nancy Winkelman
_____

USCA NO.: 26-1798
_____

LOWER COURT or AGENCY and DOCKET NUMBER:
E.D. Pa. No. 22-mc-51
_____

NAME OF
JUDGE: Chief Judge Wendy Beetlestone
_____

Specify who is suing whom, for what, and the subject of this action.  Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

1.) This is an appeal from an order of the U.S. District Court for the Eastern District of Pennsylvania imposing attorney disciplinary sanctions.

2.) The parties to this appeal are Appellant Nancy Winkelman and Appellee Disciplinary Counsel, Alfred W. Putnam, Jr.

3.) The relief involved in this appeal is the sanction that the district court imposed on Ms. Winkelman: a three-year suspension from the district court's bar.

4.) Ms. Winkelman appeals from the district court's order of March 9, 2026, imposing sanctions and approving and adopting the report and recommendation that a three-judge disciplinary panel issued on October 7, 2025.

LIST and **ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal.  If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

A copy of the district court's final order approving and adopting the panel's report and recommendation (Mar. 9, 2026; D. Ct. ECF No. 70) is attached as Exhibit A.

A copy of the panel's report and recommendation (Oct. 27, 2025; D. Ct. ECF No. 64) is attached as Exhibit B.

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

On September 14, 2022, Ms. Winkelman and Paul George (Appellant in a related case, No. 25-3264) were referred to a panel of the U.S. District Court for the Eastern District of Pennsylvania to determine whether discipline is warranted in connection with their conduct reported in Wharton v. Vaughn, Civ. No. 01-6049 (E.D. Pa.). On September 11, 2023, Disciplinary Counsel filed a Petition for Rule to Show Cause as to Respondents Nancy Winkelman and Paul George.

After ensuing proceedings, on October 27, 2025, the district court disciplinary panel in Ms. Winkelman's case issued its report and recommendation, which recommended that Ms. Winkelman be suspended from the district court's bar for three years. On March 9, 2026, the district court issued an order approving and adopting the panel's report and recommendation, overruling Ms. Winkelman's objections, and imposing that sanction.

Identify the issues to be raised on appeal:

The ultimate issue in this appeal is whether the district court reversibly erred in finding a violation of the Rules of Professional Conduct and suspending Ms. Winkelman from its bar for three years. Underlying issues that Ms. Winkelman may raise on appeal include:

-Whether the district court erred in failing to require Disciplinary Counsel to prove its case by clear and convincing evidence;

-Whether, under the proper standard of clear and convincing evidence, the record supports the disciplinary panel's finding that Ms. Winkelman violated the Rules of Professional Conduct; and

-Whether the disciplinary panel's participation in the district court's review of its own report and recommendation, over Ms. Winkelman's objection, violated Ms. Winkelman's due process rights.

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this 28 day of April ,20 26 .

## /s/ Andrew R. Hellman

Signature of Counsel

Rev. 07/2015

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN THE MATTER OF** | : | **MISCELLANEOUS** |
| | : | |
| **NANCY WINKELMAN** | : | **No. 22-mc-51** |
| | : | |

**O R D E R**

**AND NOW**, this 9th day of March, 2026, after careful consideration of this matter, including: the October 27, 2025 Report and Recommendation from Judges Paul S. Diamond, Gerald J. Pappert, and John M. Gallagher, in which they recommend that Ms. Winkelman be suspended from our bar for three years; Ms. Winkelman's Objections to and Motion Regarding the Report and Recommendation; all related submissions; and the March 9, 2026 decision of the majority of Judges of this Court approving the Report and Recommendation, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The October 27, 2025 Report and Recommendation (Doc. No. 64) is **APPROVED** and **ADOPTED**;

2. Ms. Winkelman's Objections to the Panel's Report and Recommendation are **OVERRULED** and her Motion is **DENIED**; and

3. Mr. Winkelman is suspended from the bar of the United States District Court for the Eastern District of Pennsylvania for three years, effective immediately.

It is **FURTHER ORDERED** that all filings in this matter, including the Panel's Report and Recommendation, remain **SEALED** pending the termination of all appeals and any further proceedings of this Court.

**BY THE COURT:**

_____
**WENDY BEETLESTONE, C.J.**

# EXHIBIT B



**UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF PENNSYLVANIA
UNITED STATES DISTRICT JUDGE
14614 UNITED STATES COURTHOUSE
INDEPENDENCE MALL
PHILADELPHIA, PENNSYLVANIA 19106

CHAMBERS OF
**JUDGE PAUL S. DIAMOND**
UNITED STATES DISTRICT JUDGE

(267) 299-7730

October 27, 2025

Nancy Winkelman
Philadelphia District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

Dear Ms. Winkelman:

I have enclosed a copy of the Report and Recommendation of the three-judge panel in the above matter. It is being filed under seal in accordance with our Local Rule.

If you have any objections, they must be filed under seal within fourteen (14) days. If you do not intend to file objections, please let me know as soon as possible.

Very truly yours,

Paul S. Diamond, J.

cc: Judge Gerald J. Pappert
Judge John M. Gallagher
Alfred W. Putnam, Jr.
Eric W. Sitarchuck
Bradie R. Williams

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN THE MATTER OF** | : | **MISCELLANEOUS** |
| | : | |
| **NANCY WINKELMAN** | : | **No. 22-mc-51** |
| | : | |

**Diamond, Pappert, Gallagher, J.J.**                    **October 27, 2025**

### REPORT AND RECOMMENDATION

The Third Circuit has upheld Judge Goldberg's finding that Philadelphia DA's Office Supervisor Nancy Winkelman and her subordinate Paul George misrepresented critical facts in an unsuccessful effort to persuade the Judge to vacate Robert Wharton's death sentence. Wharton v. Superintendent Graterford SCI (Wharton II), 95 F.4th 140 (3d Cir. 2024). The Circuit also upheld Judge Goldberg's imposition of Rule 11 sanctions on both Winkelman and George. Id. The Circuit and Judge Goldberg left open the question of whether these misrepresentations were knowing. Id.; see also Wharton v. Vaughn (Wharton v. Vaughn II), No. 01-cv-6049, 2022 U.S. Dist. LEXIS 164138, at *37–38 (E.D. Pa. Sep. 12, 2022). We have disbarred George, finding that he knowingly violated the Rules of Professional Conduct. In re George (George Dkt.), No. 22-mc-50 (E.D. Pa.), Doc. No. 59.

After multiple hearings and extensive briefing, we find that Nancy Winkelman knowingly made misrepresentations to effectuate a policy of vacating all death sentences on appeal, at PCRA, or on federal habeas review. We do not credit her testimony that there is no such policy. We further find that she was willfully blind to, and complicit in, George's misrepresentations to Judge Goldberg. As with George, we emphasize that we are not recommending the imposition of discipline because Winkelman opposes the death penalty. As the Third Circuit ruled in upholding Judge Goldberg's imposition of sanctions: "while the [DAO] may oppose the death penalty, it may not further that position by slanting the facts and the law." Wharton II, 95 F.4th at 150. We base

1

our decision on Winkelman's knowing role in misleading Judge Goldberg and her false testimony before us.

We recommend that Nancy Winkelman be suspended from our bar for three years.

## I.    BACKGROUND

### A.    Winkelman and the Capital Case Review Committee

Having spent decades doing civil appeals at Schnader Harrison, after Larry Krasner's 2017 election, Winkelman applied to the DAO online to serve as an entry-level Assistant District Attorney.  Winkelman Dkt. No. 56 at 7:17–9:24, 12:19–22.  Winkelman testified that although the two did not know each other, Krasner phoned Winkelman, and, over breakfast, asked her to serve as Supervisor of the Law Division—then employing some 60 to 70 lawyers, one of the four highest-level DAO positions, reporting directly to the District Attorney.  Id. at 13:6–12, 15:12–19, 16:15–17.

Although she had no criminal experience, as Law Division Supervisor, Winkelman's responsibilities were virtually all criminal, requiring her to oversee hundreds of appeals (which were almost entirely criminal), post-conviction and habeas litigation—both exclusively criminal— and civil litigation, which comprised only a tiny portion of her docket.  Id. at 13:6–12, 15:12–19.  Because Winkelman had never practiced criminal law, at her request, experienced criminal defense lawyer Paul George was appointed as her Assistant Supervisor, to fill what she described as the "very big gap" in her resume.  Id. at 13:19–14:1; George Dkt. No. 48 at 5:9–22.

Around the Spring of 2018, the DAO formed the Capital Case Review Committee.  Winkelman Dkt. No. 56 at 17:19–23.  It met weekly and included the District Attorney, his two First Assistants, Winkelman, George, the Homicide and Conviction Integrity Unit Chiefs, and the Victim Witness Coordinator.  Winkelman Dkt. No. 31 at 8:23–9:6.

Because the District Attorney had determined that the DAO would not seek the death penalty in the prosecutions it initiated, the CCRC's review was limited to post-conviction matters. Winkelman Dkt. No. 56 at 18:14–19:7.  The Committee considered only those capital cases that George selected.  Id. at 19:16–21, 21:13–16, 65:6–66:12.  Although Winkelman acknowledged that she was George's Supervisor, she did not know which cases he would present or what review he had conducted.  Id. at 21:17–19.  She herself conducted no review.  Id. at 24:15–26:10.  Like the other Committee members, Winkelman knew only what was in the memorandum presented to the CCRC that George prepared for each case.  Id. at 23:15–20.

Of the many cases that the CCRC considered, it invariably recommended that the DAO concede death penalty relief, usually on ineffectiveness grounds.  Id. at 107:7–21, 110:11–16; Strickland v. Washington, 466 U.S. 668 (1984).  Winkelman agreed with all these recommendations.  Winkelman Dkt. No. 56 at 112:19–113:6; Winkelman Dkt. No. 31 at 23:17–22.  As we explained in George, the DAO thus eventually conceded relief at post-trial as to all death penalties.  George Dkt. No. 51 at 19.

### B.  Commonwealth v. Brown and the Capital Case Review Committee

Sentenced to death after his 2005 first degree murder conviction, Lavar Brown's direct appeal was rejected by the Pennsylvania Supreme Court in 2009.  Commonwealth v. Brown, 987 A.2d 699, 703 (Pa. 2009).  After PCRA relief was denied, Brown again appealed to the Supreme Court; the DAO opposed the granting of relief.  Brown v. Commonwealth, 196 A.3d 130, 143 (Pa. 2018).  The DAO conceded death penalty relief in 2018, however, and, with Brown's counsel, jointly moved to remand so that the death sentence could be vacated on ineffectiveness grounds.  Id.  In a brief written by Paul George, the DAO argued that the Supreme Court had no authority to reject its concession:

3

> [T]he Commonwealth insists that only district attorneys, as a result of their ''wide grant of prosecutorial discretion,'' have the ''power to decide whether to seek or continue to seek the death penalty in view of the facts of any particular case.'' According to the Commonwealth, when a district attorney makes a ''reasoned fact and policy-based decision not to defend a particular conviction or sentence,'' this Court ***must immediately remand for imposition of the agreed-upon relief***, as this Court may not ''second-guess legitimate exercises of prosecutorial discretion.''

Id. at 142–43 (quoting Commonwealth's Supplemental Brief at 2–3) (emphasis added).

The Court appointed the Pennsylvania Attorney General Shapiro's Office to serve as amicus. Id. at 143–44. The Office of Attorney General refuted both the DAO's view of its unfettered authority to concede and its ineffectiveness determination. Id. The Court forcefully agreed with the OAG on both points, first ruling that although the DAO had wide discretion in deciding "whether the Commonwealth will seek the death penalty," "[a]fter trial and the entry of a capital verdict, however, a district attorney's discretion narrows significantly. . . . Prosecutorial discretion provides no power to instruct a court to undo the verdict without all necessary and appropriate judicial review." Id. at 145, 146. The Court also rejected the DAO's determination that Brown's counsel was ineffective and upheld the death penalty. Id. at 149–78.

The CCRC was created and began its work in and around the time Brown was litigated. Winkelman Dkt. No. 56 at 17:19–23. It appears that after Brown, the DAO relied solely on the CCRC's recommendations in conceding death penalty challenges. As we have described, the Committee—including Winkelman and the District Attorney—conceded relief in every capital case it considered. It thus appears that light of Brown, the CCRC was intended to provide the DAO with an ostensible basis in law for its death penalty concessions. Winkelman told us that after Brown, courts remained obligated to give those concessions "great weight." Id. at 48:8–11.

Winkelman and George attempted to make such a CCRC-based concession before Judge Goldberg in Wharton v. Vaughn (Wharton v. Vaughn I), No. 01-cv-6049, Doc. No. 155. Those

4

efforts gave rise to these disciplinary proceedings.

      **C.**      <u>**Wharton**</u>

          **1.**      **Factual History**

After Bradley and Ferne Hart refused to pay Robert Wharton and Eric Mason for unsatisfactory construction work, Wharton and Mason terrorized the couple for months, repeatedly invading their Philadelphia home. <u>Wharton v. Superintendent Graterford SCI,</u> <u>(Wharton I)</u>, 95 F.4th at 119 (3d Cir. 2024). In January 1984, they forced their way into the Hart home at knifepoint, then tortured, strangled, and drowned the Harts. <u>Id.</u> Making off with household items, Wharton and Mason left Lisa, the Harts' infant daughter, alone in the home "in the dead of winter" with the heat turned off. <u>Id.</u> She was found three days later, dehydrated and in respiratory distress, yet somehow alive. <u>Id.</u> In 1985, Wharton (who confessed after his arrest) was convicted of the double murder, receiving two death penalties. <u>Id.</u> In 1992, the Supreme Court remanded for resentencing, ruling that the trial court's aggravating circumstances instruction was defective. <u>Id.</u> After a second sentencing hearing, Wharton again received two death penalties. <u>Id.</u> at 119–120.

          **2.**      **Procedural History**

The DAO defended Wharton's conviction and 1993 death sentences on direct appeal and collateral review. At PRCA, Wharton argued for the first time (unsuccessfully) that his trial counsel had ineffectively failed during the penalty phase to present mitigation evidence of Wharton's "positive" adjustment to prison. <u>Commonwealth v. Wharton</u>, 811 A.2d 978, 983 (Pa. 2002). The Supreme Court rejected Wharton's claims. <u>See</u> <u>id.</u> In upholding the PRCA Court's decision, the Supreme Court ruled that the failure to introduce Wharton's prison adjustment records was not ineffective because those voluminous records included citations for "very serious misconduct." <u>Id.</u> at 989.

5

Represented by counsel, Wharton petitioned for federal habeas relief in 2003.  Wharton v. Vaughan (Wharton Habeas Dkt.), No. 01-cv-6049 (E.D. Pa. Oct. 7, 2003), Doc. No. 22.  See 28 U.S.C. § 2254.  Judge Goldberg was assigned the matter in 2008, and in 2012, issued a 157-page opinion denying all twenty-three claims.  Wharton Habeas Dkt. Nos. 81, 126.  Wharton appealed and, in 2018, the Third Circuit rejected all but one claim, remanding for an evidentiary hearing on whether trial counsel should have investigated and presented positive prison-adjustment evidence in mitigation during the penalty phase.  Wharton v. Vaughn (Wharton v. Vaughn III), 722 F. App'x 268, 281–84 (3d Cir. 2018); Wharton v. Vaughn (Wharton v. Vaughn I), No. 01-cv-6049, 2022 U.S. Dist. 85471, at *7–8 (E.D. Pa. May 11, 2022).  The Circuit thus ordered Judge Goldberg to "reconstruct the record," noting that because Wharton's prison record "cut both ways," the Commonwealth would have countered with the anti-mitigation evidence the Circuit explicitly described, including "very serious misconducts" and possession of a "confiscated weapon" while in prison.  Wharton v. Vaughn III, 722 F. App'x at 282–83, 283 n.21 (quoting Williams v. Beard, 637 F.3d 195, 227 (3d Cir. 2011)).

### 3.    The CCRC and Winkelman Review Wharton

Winkelman testified that the Circuit's Wharton remand was exceptional—indeed, unique: in all her decades of appellate practice, she had never known the Circuit to remand and direct the parties to reconstruct what the record would have included had a particular issue been raised at trial.  Winkelman Dkt. No. 56 at 36:14–37:23.  Yet, Winkelman gave Wharton no attention.  She did not specially assign the case (as she had done with other significant matters).  Id. at 36:8–24.  She did not review the record.  Rather, she left George to investigate the case in his usual manner.

Winkelman testified that until George presented Wharton to the CCRC, she did not know what he had determined.  The six-page memo George distributed to the Committee was never

6

disclosed to Judge Goldberg or the Third Circuit.  First disclosed during these disciplinary proceedings, the memo was devoted almost entirely to the case's factual and procedural history. Winkelman Dkt. No. 50-2 at 3–6.  It included George's conclusion that Wharton's trial counsel had ineffectively failed to present in mitigation evidence of Wharton's "positive" prison adjustment.  See id. at 6–7.  Indeed, George described Wharton's prison record as "exemplary." Id. at 7.  Remarkably, although George mentioned both the Circuit's Remand Order and positive prison adjustment evidence, he failed to inform the CCRC of the Circuit's direction to "reconstruct the record," and mentioned none of the anti-mitigation evidence in Wharton's prison record that the Circuit had explicitly ordered the Parties to reconsider.  See id. at 4–7; Wharton v. Vaughn III, 722 F. App'x at 282 (quoting Williams, 637 F.3d at 227).   Yet, Winkelman did not question these glaring omissions, or the conclusion that Wharton's prison record was "exemplary," even though she knew from the Circuit's Remand Order that his prison record contained significant anti-mitigation evidence and was not "exemplary."  Winkelman Dkt. Nos. 50-2 at 7, 56 at 65:19–66:12. Winkleman told us that she remembered nothing about the CCRC meeting at which Wharton was considered, except George's failure to present anti-mitigation evidence and the CCRC's decision. Winkelman Dkt. No. 56 at 28:15–17.  We do not credit that testimony.

The Committee (on which the District Attorney sat) thus unanimously recommended to the District Attorney that the DAO concede trial counsel's ineffectiveness for failure to present in mitigation evidence of Wharton's good prison record.  Explicitly relying on that recommendation, the DAO then submitted to Judge Goldberg a "Notice of Concession of Penalty Phase Relief," averring that:

> [f]ollowing review of this case by the Capital Case Review Committee of the Philadelphia District Attorney's Office, communication with the victim's family, and notice to petitioner's counsel, respondent hereby reports . . . it concedes relief on petitioner's remaining claim of ineffective assistance . . . .

7

Wharton Habeas Dkt. No. 155 at 3.

Judge Goldberg believed that the DAO had not provided an adequate explanation of its concession.  See id.  The DAO and Wharton's counsel then submitted a "Joint Proposed Order" urging Judge Goldberg to grant habeas relief on the ineffectiveness claim "*upon a careful and independent review of all the parties' submissions and all prior proceedings*."  Wharton Habeas Dkt. No. 156-1 (emphasis added).  The DAO thus urged Judge Goldberg to issue an Order that was not true: he had not conducted (and, in the absence of an adversarial presentation of evidence, could not conduct) a "careful and independent review of . . . all prior proceedings."  See Wharton Habeas Dkt. No. 161.  Moreover, as we discuss below, the DAO had not conducted such a review.

**D.     Evidentiary Hearings**

The proceedings before Judge Goldberg have been fully set out in the George Report and Recommendation.  George Dkt. No. 51 at 3–11.  Briefly, DAO Habeas Unit Chief Max Kaufman submitted the Notice and Joint Proposed Order at George's direction.  Wharton Habeas Dkt. No. 287-1.  Judge Goldberg refused to sign the Joint Order and instead ordered supplemental briefing on whether he could grant habeas relief solely on the DAO concession without a full evidentiary presentation.  Wharton Habeas Dkt. No. 165.

Winkelman joined George on the Supplemental Brief, which she edited.  Wharton Habeas Dkt. No. 162 at 6; Winkelman Dkt. No. 56 at 48:2–3.  They urged Judge Goldberg to grant the DAO's concession in accordance with the Notice and Joint Order.  See Wharton Habeas Dkt. No. 162.  Winkelman and George argued that although the DAO's concession of ineffectiveness was not "binding" on the Court, it was entitled to "great weight," particularly because the CCRC had "*carefully reviewed the facts and law*" and determined that Wharton's ineffectiveness claim was meritorious.  Id. at 3, 4–6 (emphasis added).

Dissatisfied with these submissions, Judge Goldberg asked the OAG to participate as an amicus.  Wharton Habeas Dkt. No. 165 at 4.  The OAG found considerable anti-mitigation evidence—including Wharton's violent attempted escape in 1986—simply by reviewing his prison record (something the CCRC never did).  See Wharton Habeas Dkt. No. 171.  After the OAG submitted its brief describing the anti-mitigation evidence the DAO had failed to disclose, Judge Goldberg held hearings on the matter, permitting the OAG to participate.  See Wharton Habeas Dkt. Nos. 227, 228, 237, 247, 266, 270.  Entering her appearance, Winkelman herself authored and signed a vigorous eight page "Objection" to the OAG's participation as a "full-fledged adversarial party."  Wharton Habeas Dkt. No. 226 at 5.  Winkelman repeated that the DAO decided to concede "*after a thorough review*" by the CCRC.  Id. at 2 (emphasis added).  Winkelman protested the OAG's "in-depth factual investigation," and its "highly aggressive, partisan stance."  Wharton Habeas Dkt. No. 226 at 2–4.  Winkelman thus argued that Judge Goldberg had impermissibly insisted on conducting an adversarial proceeding.  Yet, in upholding Judge Goldberg's eventual denial of habeas relief, the Third Circuit upheld the propriety of the OAG's participation precisely because "the adversarial process broke down after the DAO's about-face."  Wharton I, 95 F.4th at 125.

Because it appeared that the DAO had misrepresented critical facts, Judge Goldberg announced that he would hold a show cause hearing and consider imposing sanctions against those responsible—primarily Winkelman and George.  Wharton Habeas Dkt. No. 309.  Days before that hearing, Winkelman and George urged Judge Goldberg to forgo any sanctions proceeding and instead refer the matter to this Committee.  Wharton Habeas Dkt. No. 300.  Judge Goldberg denied the request and held a sanctions hearing on June 23, 2022.  Wharton Habeas Dkt. Nos. 304, 309.

### E.    The Third Circuit Upholds Sanctions Imposed by Judge Goldberg

Judge Goldberg was disturbed by the DAO's written submissions (all of which Winkelman had either authored, edited, or reiterated) in which it stated that it had "carefully reviewed the facts and the law" and thus determined that Wharton's ineffectiveness claim was meritorious. <u>Wharton Habeas Dkt.</u> No. 162 at 3. Winkelman and George nonetheless argued to Judge Goldberg that they were not obligated to explain their decision to concede relief—thus plainly violating <u>Brown</u>. <u>See</u> <u>Wharton Habeas Dkt.</u> No. 309 at 11:24–12:4, 25:9–13, 76:17–77:14. Moreover, their counsel invoked the DAO's "deliberative process privilege"—a privilege not held by Winkelman or George—and severely limited Winkelman's testimony. <u>See Wharton Habeas Dkt.</u> No. 309 at 8:22–9:7, 34:16–35:3, 36:10–37:15.

George equivocated as to whether he knew about the escape attempt before making the concession—an equivocation we discredited in the <u>George</u> Report. <u>Wharton Habeas Dkt.</u> No. 309 at 66:16–19; <u>George Dkt.</u> No. 51 at 14–18, 24–25. Winkelman denied knowing about any anti-mitigation evidence. <u>Wharton Habeas Dkt.</u> No. 309 at 34:6–18. Yet, in its Remand Order, the Third Circuit explicitly referred to Wharton's "very serious misconducts," and possession of a "confiscated weapon" while in prison. <u>Wharton v. Vaughn III</u>, 722 Fed App'x at 283 n.21. Given these explicit references in its Remand—an Order Winkelman acknowledged was unique in her experience—her denial that she knew about the anti-mitigation evidence necessarily was not true. <u>See Winkelman Dkt.</u> No. 56 at 36:14–37:23. When pressed by Judge Goldberg as to when she had learned about Wharton's escape attempt, Winkelman equivocated, testifying that she had "tried to remember" and was "perplexed." <u>Wharton Habeas Dkt.</u> No. 309 at 34:6–18.

Judge Goldberg imposed Rule 11(c) sanctions on Winkelman and George for misrepresenting that the DAO had "carefully" reviewed the facts and the law respecting the

ineffectiveness claim.  <u>Wharton v. Vaughn II</u>, 2022 U.S. Dist. LEXIS 164138, at *32.  The Third Circuit agreed with Judge Goldberg's rejection of Winkelman's and George's testimony respecting their "careful" review of the record, and upheld the imposition of sanctions imposed on that ground.  <u>Wharton v. Vaughn III</u>, 95 F.4th 140.  The Circuit also upheld the imposition of sanctions for the DAO misleading Judge Goldberg about its communications with the victims' family about its decision to concede death penalty relief.  <u>Id.</u> at 150–51.  It appears that this misrepresentation was the work of George.

## II.    DISCIPLINARY PROCEEDINGS

Judge Goldberg referred Winkelman and George to Chief Judge Sánchez for possible discipline.  Loc. R. Civ. P. 83.6(V)(A); Pa. R. Pro. Conduct 3.1, 3.3.  Chief Judge Sánchez then referred to matter to the Attorney Discipline Committee.  <u>Winkelman Dkt.</u> No. 2.  After he was appointed Disciplinary Counsel, Alfred W. Putnam, Jr. issued a Rule to Show Cause why Winkelman did not violate Rules of Professional Conduct 3.3(a) and 3.1.  <u>Winkelman Dkt.</u> No. 8. We denied Winkelman's Motion to Stay Disciplinary Proceedings pending her (eventually unsuccessful) appeal of Judge Goldberg's sanctions Order.  <u>Winkelman Dkt.</u> No. 7.

In her Answer to Putnam's Petition, Winkelman argued that the Petition should be "dismissed with prejudice" and the Order to Show Cause "discharged."  <u>Winkelman Dkt.</u> No. 12 at 1.  In support, Winkelman, *inter alia*, denied that the DAO had not misrepresented to Judge Goldberg respecting the CCRC's review:

> [P]rior to conceding relief, the CCRC conducted a careful review of the records concerning Wharton's case, which ***included anti-mitigation evidence*** (but not the escape attempt).

<u>Winkelman Dkt.</u> No. 12 at 25 (emphasis added).  This is not true.  Winkelman and George testified before us that George's presentation included **no** anti-mitigation evidence.  George's memo to the

11

CCRC also included no reference to anti-mitigation evidence. Winkelman Dkt. No. 56 at 66:10–12, 68:10–12. Nor did it include the Circuit's instruction to reconstruct the record to include anti-mitigation evidence. See Winkelman Dkt. No. 50-2 at 3–8. As the Circuit thus concluded, Winkelman's and George's review of the record necessarily was not a "careful" review. 95 F.4th at 149–150.

We denied Winkelman's request to "dismiss" these proceedings and "discharge" Winkelman as unwarranted and contrary to our Rules. Winkelman Dkt. No. 16. We first held hearings on whether Winkelman's lawyers, who also represented George and the DAO, suffered from conflicts of interest. Winkelman Dkt. Nos. 29, 30. George and Winkelman requested a joint hearing, where both waived any conflict. Winkelman Dkt. No. 30, 4:12–17. After the hearing, however, she reconsidered and obtained separate counsel, who requested a separate show cause hearing—although Winkelman and George exchanged transcripts of their separate hearings. Winkelman Dkt. Nos. 37, 38, 43. Winkelman's hearing was held on April 1, 2025. Winkelman Dkt. No. 56. The matter was exhaustively briefed. Winkelman filed both pre- and post-hearing memoranda, to which Putnam responded. Winkelman Dkt. Nos. 53, 57, 58. After George's Show Cause Hearing on May 16, 2025, Winkelman submitted a supplemental brief based on her review of the George transcript. See George Dkt. No. 48; Winkelman Dkt. No. 63.

## III.   LEGAL STANDARDS

The Court has inherent authority "to control admissions to its bar and to discipline attorneys who appear before it." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); In re Surrick, 338 F.3d 224, 229 (3d Cir. 2003). This Court applies the Pennsylvania Rules of Professional Conduct in attorney disciplinary proceedings. See Loc. R. Civ. P. 83.6(IV)(B). Our Local Rules state:

> For misconduct defined in these rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this court may

12

be disbarred, suspended from practice before this court, reprimanded or subjected
to such other disciplinary action as the circumstances may warrant.

See Local R. Civ. P. 83.6(IV)(A).  Attorney discipline is intended "to protect the public from unfit

attorneys and to maintain the integrity of the legal profession and the judicial process."  Office of

Disciplinary Couns. v. Price, 732 A.2d 599, 606 (Pa. 1999).

## IV.    DISCUSSION

In upholding the Rule 11 sanctions imposed on Winkelman and George, the Third Circuit

condemned their conduct before Judge Goldberg:

> Courts rely on lawyers' honesty; lawyers may not mislead them. But the
> Philadelphia District Attorney's Office did just that. It conceded that a court should
> vacate Robert Wharton's death sentence. Yet in doing so, it did not comply with
> this Court's instruction to investigate evidence cutting against Wharton's habeas
> claim.

Wharton II, 95 F.4th at 140.  Winkleman misrepresented to Judge Goldberg.  She did not and could

not have had an objectively reasonable belief that her misstatements were true.  She also failed to

conduct a reasonably diligent inquiry as to the basis of those misstatements, and failed to inform

herself about the facts of the case.  Winkleman thus violated Rules 3.3 and 3.1, which imposed on

her a duty of candor and a duty to present to the Court only assertions that have a basis in law and

fact.  Pa. R.P.C. 3.3, 3.1.

### A.    Rule 3.3 (Candor Toward the Tribunal)

Rule 3.3(a) provides:

> A lawyer shall not knowingly . . . make a false statement of material fact or law to
> a tribunal or fail to correct a false statement of material fact or law previously made
> to the tribunal by the lawyer.

Pa. R.P.C. 3.3(a)(1).  Assertions that a lawyer purportedly bases on her own knowledge thus "may

properly be made only when the lawyer knows the assertion is true or believes it to be true on the

basis of a reasonably diligent inquiry."  RPC 3.3(a)(1) cmt. 3.  This obligation is "heightened

13

where the proceeding lacks the 'balance of presentation by opposing advocates.'" <u>Wharton v. Vaughn</u>, No. 01-6049, 2022 WL 1488038, at *17 (E.D. Pa. May 11, 2022) (quoting Pa. R.P.C. 3.3 cmt. 14).

> To establish a Rule 3.3(a) violation, Disciplinary Counsel must show that:
>
> an attorney, based upon h[er] own knowledge, made false [statements] in a court pleading. This can be accomplished by presenting documentary evidence or testimony . . . that the [statements] are false. The burden then shifts to the respondent to establish that the [statements] are true or that he had an objectively reasonable belief that the [statements] were true, based upon a reasonably diligent inquiry.

<u>Price</u>, 732 A.2d at 604. "[E]very court pleading containing an averment of fact not of record is required to state that the assertion is true based upon the pleader's personal knowledge, information or belief." <u>In re Surrick</u>, 338 F.3d at 235 (quoting <u>Price</u>, 732 A.2d at 603). "[S]uch averments must 'be supported by oath or affirmation or made subject' to certain penalties." <u>Id.</u> (quoting <u>Price</u>, 732 A.2d at 603). An attorney who is shown to be willfully blind to another's false statement to the Court will be deemed to have knowingly joined the falsity. <u>See Glob.-Tech Appliances, Inc. v. SEB S.A.</u>, 563 U.S. 754, 769 (2011) ("a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts"); <u>Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.</u>, 595 U.S. 178, 187 (2022) ("willful blindness may support a finding of actual knowledge") (citing <u>Intel Corp. Inv. Pol'y Comm. v. Sulyma</u>, 589 U.S. 178, 187–189 (2020)). <u>See also United States v. Stadtmauer</u>, 620 F.3d 238, 256 (3d Cir. 2010) ("Willful blindness is a 'subjective state of mind that is deemed to satisfy a scienter requirement of knowledge' and 'cannot become a safe harbor for culpable conduct.'") (quoting <u>United States v. One 1973 Rolls Royce</u>, 43 F.3d 794, 808 (3d Cir. 1994); <u>United States v. Wert-Ruiz</u>, 228 F.3d 250, 258 (3d Cir. 2000)).

14

Here, Putnam has established that Winkelman's statements that the DAO conducted a "careful" review of Wharton were false: Winkelman has not shown that she had an objectively reasonable belief that these statements were true.  See id.; Winkelman Dkt. No. 58 at 7.  Nor has Winkelman shown that she conducted a reasonably diligent inquiry before she joined those misrepresentations to Judge Goldberg.  Moreover, the evidence shows that Winkelman acquiesced in George's misstatements that she knew were false.

In its January 2018 remand, the Third Circuit ordered the Parties to "reconstruct the record" and to "take account of the anti-mitigation evidence that the Commonwealth would have presented to rebut the petitioner's mitigation testimony."  Wharton v. Vaughn III, 722 F. App'x at 282–83 (quoting Williams, 637 F.3d at 227).  Once again, the Circuit explicitly set out examples of the anti-mitigation evidence the Parties were to consider, including Wharton's "very serious misconducts."  Id. at 283 n.21.

In her Answer to Putnam's Petition, Winkelman argued that she had done just that, invoking yet again the CCRC's "careful review of the records . . . *included anti-mitigation evidence*."  Winkelman Dkt. No. 12 at 25 (emphasis added).  Winkelman acknowledged, however, that George's presentation to the CCRC included **no** anti-mitigation evidence:

> Q: Do you recall Mr. George telling you anything about anti-mitigation evidence?
> A: No.

Winkelman Dkt. No. 56 at 66:10–12.

Winkelman stood by her misrepresentations, either authoring, adopting, editing, or otherwise reiterating false statements about the CCRC's consideration of Wharton.  She defended the propriety of both the Notice of Concession and the Joint Proposed Order, urging Judge Goldberg to grant habeas relief "upon a careful and independent review of all the parties'

15

submissions and all prior proceedings"—even though she knew that the CCRC had not conducted such a review. Wharton Habeas Dkt. Nos. 155 at 3, 156-1.

Winkelman made similar misrepresentations in the Supplemental Brief that she edited in which she reiterated that the DAO had "carefully reviewed the facts and law." Id. at 3. She testified similarly before us:

> Q: Now I'd like to turn your attention Page 3 of the [Supplemental Brief], the first full paragraph.
> A: Yes.
>
> . . .
>
> Q: Were you comfortable that this statement [that the DAO had conducted a careful review] was accurate?
> A: Yes.

Winkelman Dkt. No. 56 at 48:20–49:5. Winkelman argued to us that the Supplemental Brief was "undisputedly true when made." Winkelman Dkt. No. 12 at 2, 17. She testified that, in any event, because she had no actual knowledge of the anti-mitigation evidence, she lacked any wrongful intent warranting discipline. Winkelman Dkt. No. 56 at 43:12–44:5. This is untrue. Once again, in its Remand Order—which Winkelman acknowledged was unique—the Circuit explicitly referred to the anti-mitigation evidence in Wharton's prison record, and ordered the Parties to consider it along with mitigation evidence. Id. at 36:25–37:4, 37:14–37:23; Wharton v. Vaughn III, 722 F. App'x at 282–83. We thus find that Winkelman necessarily knew that there was anti-mitigation evidence that the CCRC, in its "careful review," never considered.

In any event, Winkleman's claimed ignorance of the anti-mitigation evidence does not reduce her culpability. Any ignorance was the result of her failure to conduct the "reasonably diligent inquiry" required before she made the misleading statements to Judge Goldberg. 3.3(a)(1) cmt. 3. Indeed, she testified before us that she made no inquiry and conducted no investigation,

16

notwithstanding the Third Circuit's explicit Remand direction that the Parties to "take account of the anti-mitigation evidence that the Commonwealth would have presented."  Winkelman Dkt. No. 56 at 86:24–87:2, 89:23–90.5; Wharton v. Vaughn III, 722 F. App'x at 282–83.

Although Winkelman knew that no "careful review" had been conducted, she resisted Judge Goldberg's efforts to undertake such a review.  She authored the DAO's Objection to the OAG's "in-depth factual investigation" as a "full-fledged adversarial party" as unnecessary because the CCRC had already conducted "a thorough review."  Wharton Habeas Dkt. No. 226 at 2.

Winkelman testified falsely that she did not expect Judge Goldberg to sign the DAO's Joint Proposed Order:

> Q: Now let me ask you, did you have an expectation, *you personally*, that Judge Goldberg would sign the Order?
> A: I didn't know one way or another.
> Q: I mean, usually when lawyers come to you and say, hand up a stipulation, right, there's no arguing the other side, and they hand it up[.]  Judge Goldberg presumably could have signed the [O]rder, right?
> A: Yes.

Id. at 68:17–24 (emphasis added).  We do not credit this testimony.  There would have been no point in urging an order to Judge Goldberg that Winkelman did not expect him to sign.

Winkelman testified the DAO followed the CCRC's recommendation to concede relief in every capital case the Committee reviewed.  It is thus apparent to us that after Brown, the DAO used the CCRC's recommendation as a legal fig leaf on which to base its concessions—a policy that has caused the Third Circuit grave concern:

> Since 2018, more than 100 convictions have been overturned via post-conviction concessions from the Philadelphia DA, untested by the adversarial process.

Johnson v. Mahanoy, 144 F.4th 178, 187 (3d Cir. 2025) (rehearing denied).

In sum, we find that Winkelman misrepresented to Judge Goldberg and to us.  We also find

that Winkelman was willfully blind to the false statements made by George.  Finally, Winkelman failed to conduct a reasonable inquiry before making or ignoring such misstatements so that she could help implement a DAO policy she denied exists.  She thus repeatedly violated Rule 3.3.

**B.      Rule 3.1 (Meritorious Claims and Contentions)**

Rule 3.1 provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.

Pa. R.P.C. 3.1.  Lawyers must "inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." Slaughter v. Superintendent Phoenix SCI, 816 F. App'x 658, 661 (3d Cir. 2020) (citing Pa. R.P.C. 3.1. cmt. 2).

Despite joining in the DAO's repeated statements to Judge Goldberg that it had made a "careful," "independent," and "thorough" review in Wharton, Winkelman informed herself of virtually nothing respecting the case.  See George Dkt. No. 51 at 18.  As we have discussed, despite being George's Supervisor and Division head, Winkelman never told him which cases he should present to the CCRC.  Winkelman Dkt. No. 56 at 87:3–5, 110:11–16.  She never learned what, if any, investigation George had conducted, and did nothing to familiarize herself with the matters she and the CCRC would review.  Id. at 86:24–87:2, 89:23–90.5.  She failed to follow up with George as to why he neither presented anti-mitigation evidence to the Committee, nor mentioned the Circuit's Order to "reconstruct the record," which she knew violated the Circuit's instructions. See id. at 66:13–19, 76:6–10; Wharton v. Vaughn III, 722 F. App'x at 282 (quoting Williams, 637 F.3d at 227).

Winkelman urged Judge Goldberg to sign the Joint Proposed Order, even though she knew it was not true: in the absence of an adversarial proceeding and evidentiary presentation, he could

18

not conduct a "careful and independent review" of Wharton. Wharton Habeas Dkt. 156-1. Moreover, in the absence of any anti-mitigation evidence, Judge Goldberg would necessarily violate the Third Circuit's Remand Order.

Winkelman acknowledged that after the OAG revealed the anti-mitigation evidence—including Wharton's violent escape attempt—she did not look into the matter further or suggest to the DAO, George, or the Committee that the ineffectiveness concession be revisited. See Wharton Habeas Dkt. No. 226. Indeed, she testified that presentation of the anti-mitigation evidence would not have changed the CCRC's recommendation. Winkelman Dkt. 56 at 49:19–50:12. Moreover, she opposed the OAG's evidentiary presentation and knowingly stood by the CCRC's flawed ineffectiveness determination, urging Judge Goldberg to accept it because it was based on the Committee's "thorough review." Wharton Habeas Dkt. No. 226 at 3. She thus sought to ensure that Judge Goldberg issued an Order that had no basis in law and fact.

In sum, Winkelman failed to inform herself of the facts in Wharton, personally signed and presented to Judge Goldberg legal positions without a basis in law or fact, and urged the Judge to violate the Circuit's Remand Order. We thus find that Winkelman repeatedly violated Rule 3.1.

## V.    RECOMMENDED DISCIPLINE

Winkelman's transgressions, although serious, are less serious than those of George, whom we have disbarred. Accordingly, we recommend Winkelman's suspension for three years.

Our Court follows the American Bar Association's Standards for Imposing Lawyer Sanctions. See, e.g., In re Malofiy, No. 14-mc-139 (E.D. Pa.), Doc. No. 52. The ABA condemns lawyers who misrepresent to the court. ABA, Standards for Imposing Lawyer Sanctions (1986, amended 1992) § 6.1 ("Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly

19

being withheld, and takes no remedial action"). It counsels that, "[a]fter misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." Id. § 9.1. Aggravating circumstances include "a pattern of misconduct," "multiple offenses," the "submission of . . . false statements, or other deceptive practices during the disciplinary process, and "substantial experience in the practice of law." Id. § 9.22. Mitigation factors include the "absence of a prior disciplinary record" and "character or reputation." Id. § 9.32. Discipline is especially suitable in "cases involving public officials who engage in conduct that is prejudicial to the administration of justice." Id. §§ 5.2, 5.22 ("Suspension is generally appropriate when a lawyer in an official or governmental position knowingly fails to follow proper procedures or rules").

There are aggravating and mitigating factors here. Because Winkelman was a prosecutor, her misrepresentations to Judge Goldberg betrayed the public's trust. Moreover, her written misrepresentations and false testimony began in 2022 and continued in her response to Putnam's Petition and her false testimony before us. Her misrepresentations to Judge Goldberg were made in the absence of an adversarial proceeding. See Pa. R.P.C. 3.3 cmt. 14. That Winkelman was an experienced lawyer makes her transgressions more serious. ABA, Standards for Imposing Lawyer Sanctions (1986, amended 1992) § 9.22(i).

The mitigating factors include an absence of disciplinary history. Moreover, Winkelman has had a long and distinguished career. We have found that George (not Winkelman) was the "quarterback" of the DAO's misrepresentations. George Dkt. No. 51 at 22. Finally, George alone misrepresented to Judge Goldberg with respect to the DAO's communications with the Hart family.

20

## VI.    CONCLUSION

Winkelman knowingly made false statements and turned a blind eye to many of George's misrepresentations.  Serious as these transgressions are, they are less serious than those of George.  Moreover, George alone was responsible for misleading Judge Goldberg with respect to the DAO's communications with the Hart family.  In these circumstances, we believe less severe discipline is warranted.  Accordingly, we recommend Winkelman's suspension from our bar for three years.

**AND IT IS SO ORDERED.**


*/s/ Paul S. Diamond*

Paul S. Diamond, J.


*/s Gerald J. Pappert*

Gerald J. Pappert, J.


*/s/ John M. Gallagher*

John M. Gallagher, J.

21