# No. 26-1798

## In the United States Court of Appeals
FOR THE THIRD CIRCUIT

IN RE: NANCY WINKELMAN,

*Appellant*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 22-mc-0051

# APPELLANT'S REPLY BRIEF

JAMES D. NELSON
ANDREW R. HELLMAN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 739-3000

ERIC W. SITARCHUK
MORGAN, LEWIS & BOCKIUS LLP
2222 MARKET STREET
PHILADELPHIA, PA 19103
(215) 963-5000

*Counsel for Appellant Nancy Winkelman*

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ........ ii
INTRODUCTION ........ 1
ARGUMENT ........ 4
I. The district court reversibly erred by failing to apply the burden of proof that its legal conclusions require. ........ 4
  A. The Panel made conclusions under Pennsylvania law that must be proven under Pennsylvania standards. ........ 4
  B. Disciplinary counsel concedes that Pennsylvania law required clear and convincing evidence. ........ 5
  C. Disciplinary counsel does not explain how this Court could affirm the district court despite its legal error. ........ 6
II. The record lacks clear and convincing evidence to support the conclusion that Winkelman violated either Rule at issue. ........ 8
  A. The record contains no clear and convincing evidence of a *knowing* false material statement in violation of Rule 3.3. ........ 8
    1. Rule 3.3 requires actual knowledge of falsity, which disciplinary counsel does not claim to have shown. ........ 10
    2. Uncontradicted evidence shows that Winkelman, in 2019, had a reasonable factual basis to believe that the DAO had carefully reviewed the facts and law. ........ 18
  B. The record lacks clear and convincing evidence to support the conclusion that Winkelman raised a "frivolous" claim in violation of Rule 3.1. ........ 24
III. The Panel erred by acting first as adversary at the hearing, then as adjudicator in the district court's final decision. ........ 30
CONCLUSION ........ 33

## TABLE OF CITATIONS

**Page(s)**

**CASES**

*Am. Hosp. Ass'n v. NLRB*,
499 U.S. 606 (1991) .......... 22

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*,
877 F.3d 136 (3d Cir. 2017) .......... 25

*Borden v. United States*,
593 U.S. 420 (2021) .......... 11

*Burnette v. Fahey*,
687 F.3d 171 (4th Cir. 2012) .......... 23

*Carson v. Borough*,
346 A.3d 390 (Pa. Commw. Ct. 2025) .......... 15

*Commonwealth v. Brown*,
196 A.3d 130 (Pa. 2018) .......... *passim*

*Commonwealth v. Chmiel*,
30 A.3d 1111 (Pa. 2011) .......... 26

*Del Quadro v. City of Phila.*,
437 A.2d 1262 (Pa. Super. Ct. 1981) .......... 15

*Erie Indem. Co. v. Coal Operators Cas. Co.*,
272 A.2d 465 (Pa. 1971) .......... 15

*Feigley v. Dep't of Corr.*,
872 A.2d 189 (Pa. Commw. Ct. 2005) .......... 6

*Frank v. Colt Indus., Inc.*,
910 F.2d 90 (3d Cir. 1990) .......... 25

*Gaiardo v. Ethyl Corp.*,
835 F.2d 479 (3d Cir. 1987) .......... 27

**TABLE OF CITATIONS**
**(continued)**

**Page(s)**

*In re Bestwall LLC*,
47 F.4th 233 (3d Cir. 2022) .......... 9

*In re Press*,
636 F. App'x 606 (3d Cir. 2016) .......... 5

*In re Surrick*,
338 F.3d 224 (3d Cir. 2003) .......... 6, 12

*In re Wettach*,
811 F.3d 99 (3d Cir. 2016) .......... 5

*McCarthy v. DEA*,
171 F.4th 245 (3d Cir. 2026) .......... 10, 13

*McKnight v. Gen. Motors Corp.*,
511 U.S. 659 (1994) .......... 26

*Off. Disciplinary Couns. v. Anon. Att'y*,
331 A.3d 523 (Pa. 2025) .......... 5, 7

*Off. Disciplinary Couns. v. Anon. Att'y A*,
714 A.2d 402 (Pa. 1998) .......... 12

*Off. Disciplinary Couns. v. Price*,
732 A.2d 599 (Pa. 1999) .......... *passim*

*Off. Disciplinary Couns. v. Surrick*,
749 A.2d 441 (Pa. 2000) .......... 12, 14, 19

*Rokita v. Pa. Dep't of Corr.*,
273 A.3d 1260 (Pa. Commw. Ct. 2022) .......... 23

*Smith v. Beard*,
26 A.3d 551 (Pa. Commw. Ct. 2011) .......... 6

## TABLE OF CITATIONS
## (continued)

**Page(s)**

*Strickland v. Washington*,
466 U.S. 668 (1984) .......... 29

*United States v. Williams*,
458 F.3d 312 (3d Cir. 2006) .......... 23

*Wharton v. Superintendent Graterford SCI*,
95 F.4th 140 (3d Cir. 2024) .......... 3

*Williams v. Pennsylvania*,
579 U.S. 1 (2016) .......... 31, 32

*Young v. United States*,
315 U.S. 257 (1942) .......... 28

**OTHER AUTHORITIES**

3d Cir. Loc. R. 28.3 .......... 25

Fed. R. App. P. 28 .......... 25

Pa. R.C.P. 76 .......... 14

Pa. R.C.P. 1017 .......... 15

Pa. R.C.P. 1024 .......... 13

Pennsylvania Rule of Professional Conduct 3.1 .......... 2, 24, 25, 26

Pennsylvania Rule of Professional Conduct 3.3 .......... *passim*

Pennsylvania Rule of Professional Conduct 5.1 .......... 12

Pennsylvania Rule of Professional Conduct 8.2 .......... 14

Pennsylvania Rule of Professional Conduct 8.4 .......... 12

## INTRODUCTION

Disciplinary counsel's Response Brief confirms the defects in the R&R. He supports the Panel's conclusions but offers no meaningful defense of its legal reasoning, nor denies its many errors in misconstruing the factual record. As such, disciplinary counsel fails to refute any of the three independent grounds to reverse.

*First*, disciplinary counsel admits the Panel's conclusions require clear and convincing evidence. He does not deny that the Panel failed to apply that burden of proof, or that such an omission is reversible error. Disciplinary counsel's only response is to dismiss the error here as an "academic" question of "phrasing," supposedly "because none of the underlying facts can fairly be said to be in dispute." RB32. The facts plainly are disputed, and his one-sentence assertion of harmless error is not a substitute for the factfinder applying the required standard.

*Second*, disciplinary counsel does not offer any defense of the Panel's various theories of violations, nor does he argue that Winkelman made any statement with actual knowledge of its falsity. He instead argues that she violated Rule 3.3 "recklessly," in that "she and her office certainly failed to conduct the kind of reasonably diligent inquiry they

were expected to conduct." RB36. As a matter of law, recklessness or an inadequate investigation is not enough to show a violation of a Rule that provides that a "lawyer shall not *knowingly* … make a false statement of material fact or law to a tribunal." Pa. R. Pro. Conduct. 3.3(a)(1) (emphasis added). And, as a matter of fact, the record establishes that Winkelman reasonably understood the DAO's review to be "careful," and she surveyed that evidence in her opening brief. *See* AOB32-35. Disciplinary counsel does not respond to any of it.

As for Rule 3.1, disciplinary counsel's argument is conclusory at best. It includes no citations and is thus forfeited. RB41-45. Further, while conceding that Wharton's requested relief was not frivolous, it fails to defend the R&R's holding that the DAO's support of that argument somehow was. Instead, disciplinary counsel merely declares (without support) that the DAO's purported request for deference was "obviously frivolous." RB43. But that argument is wrong on the law and the facts and, in all events, falls well short of showing the complete baselessness that Rule 3.1 requires.

*Third*, disciplinary counsel does not respond to Winkelman's due process argument; he attacks only strawmen. Winkelman argued that

after the Panel chose to play an adversarial role at the hearing, due process required it to then recuse from the district court's final adjudication of the decision involving her. *See* AOB52-61. Disciplinary counsel's failure to respond concedes the point.

This Court previously found that Winkelman "made mistakes" and "should have investigated more before approving the misstatements," but emphasized the lack of evidence that this "dedicated public servant[] … misled the court intentionally." *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 151 (3d Cir. 2024). The charges here required such evidence of *knowing* misconduct that this Court did not find. The R&R and disciplinary counsel's brief confirm that these proceedings did not produce the additional clear and convincing evidence of misconduct that the additional elements of the charges against Winkelman required.

This case is not a referendum on the DAO. It is an appeal from an order imposing disciplinary sanctions on one individual, a highly respected lawyer whose career reflected, in a myriad of ways, the best of what the bar seeks from its members. And disciplinary counsel does not refute any of the fatal defects in the district court's conclusions related to Winkelman. This Court should reverse.

## ARGUMENT

### I. The district court reversibly erred by failing to apply the burden of proof that its legal conclusions require.

Disciplinary counsel concedes that Pennsylvania law requires attorney misconduct to be proven by clear and convincing evidence. RB31. And he does not deny that the district court here failed to apply that burden of proof. AOB27. That alone requires reversal. AOB26-28. Disciplinary counsel summarily disagrees for what appear to be three reasons. Each fails.

#### A. The Panel made conclusions under Pennsylvania law that must be proven under Pennsylvania standards.

Winkelman argued that the Panel applied state law and therefore needed to apply state burdens of proof. AOB26. Disciplinary counsel, citing Pennsylvania authorities throughout his brief, recognizes that Pennsylvania law governs these proceedings. Nonetheless, he purports to doubt whether the Pennsylvania burden of proof applied, but not persuasively.

Disciplinary counsel attacks strawmen in arguing that this Court does not categorically require district courts to apply "'clear and convincing' evidence" to all attorney discipline cases (RB30), and that "a preponderance of the evidence standard does not offend due process" (RB32 n.8).

However, this Court *does* require district courts *applying a state's law* to apply that state's burden of proof, "including when applying state disciplinary rules." AOB26; *see In re Press*, 636 F. App'x 606, 611 (3d Cir. 2016) (New Jersey burden of proof applies to New Jersey rules violation); *see also, e.g.*, *In re Wettach*, 811 F.3d 99, 105 (3d Cir. 2016) (state burdens of proof apply whenever "state law provides the rule of decision").

Disciplinary counsel similarly deflects in observing that the district court's local rules permit discipline for findings of "misconduct" or "good cause." RB30-31. But that observation is immaterial to the burden of proof here because the Panel did not find general "misconduct" or "good cause." Rather, as in *Press*, the Panel drew conclusions of state law—specifically, that Winkelman "violated [*Pa.* R.P.C.] 3.3 and 3.1." *E.g.*, JA523. That required proof by Pennsylvania standards.

### B. Disciplinary counsel concedes that Pennsylvania law required clear and convincing evidence.

Disciplinary counsel agrees that Pennsylvania law requires "clear and convincing evidence to establish attorney misconduct." *Off. Disciplinary Couns. v. Anon. Att'y*, 331 A.3d 523, 539 (Pa. 2025); *accord* RB31.

In the face of that significant concession, disciplinary counsel attempts to salvage his case by asserting (in a single sentence) that a

unique burden-shifting framework applies whenever "charges relate to the making of false statements" requiring a showing of an objectively reasonable belief. RB31 (citing *In re Surrick*, 338 F.3d 224, 234-35 (3d Cir. 2003)). Disciplinary counsel misstates that framework, which does not apply to charges of any false statement but rather only "false allegations in a court pleading." *Surrick*, 338 F.3d at 235; *accord Off. Disciplinary Couns. v. Price*, 732 A.2d 599, 603-04 (Pa. 1999). In contrast, burden shifting would not apply to disciplinary counsel's charges of misstatements in a legal "brief," which "is not a pleading" under Pennsylvania law. *Smith v. Beard*, 26 A.3d 551, 558-59 (Pa. Commw. Ct. 2011); *Feigley v. Dep't of Corr.*, 872 A.2d 189, 193 n.3 (Pa. Commw. Ct. 2005). And, even on disciplinary counsel's telling, the burden would not "shift" until after he carried "the initial burden of" satisfying a "burden of proof … indistinguishable from a 'clear and convincing' standard"—which, of course, he did not do. RB31.

### C. Disciplinary counsel does not explain how this Court could affirm the district court despite its legal error.

Disciplinary counsel does not dispute that a district court's failure to apply the correct burden of proof is reversible error. AOB27-28 (citing cases ignored by disciplinary counsel); *see* RB30 (acknowledging

precedent where "this Court … reversed [a] district court for applying the clear and convincing standard when it should have applied the preponderance of the evidence standard"[1]). While disciplinary counsel suggests in one sentence that any error was harmless—asserting that "debate over the phrasing of the burden of proof is entirely academic because none of the underlying facts can fairly be said to be in dispute"—he develops no supporting argument, and cites no legal support conflicting with cases requiring reversal when the appropriate standard was not applied. RB32.

Thus, disciplinary counsel does not explain why he dismisses the Panel's failure to apply the governing legal standard as a question of "phrasing." No language in the R&R could even arguably reflect the Panel applying the applicable heightened burden.

And the facts obviously are disputed. Disciplinary counsel acknowledges that Winkelman "argues … that she reasonably believed [her statements] were true when made." RB4. Winkelman indeed argued that she

[1] It is of course immaterial that the district court in that case erroneously raised the burden of proof while the Panel here erroneously lowered it. The "allocation and weight of the burden of proof is critical in determining who should prevail." *Anon. Att'y*, 331 A.3d at 532. Tipping the scales—in either direction—is reversible error.

reasonably "understood the CCRC's process to be careful" (AOB32), citing evidence throughout the record (AOB32-35). Disciplinary counsel does not respond to her argument about those facts at all. *See* RB32-40 (never addressing any of that record evidence). Unless his nonresponse is a concession of error, the facts are disputed, and the Panel's refusal to apply the correct standard in resolving them requires reversal.

## II. The record lacks clear and convincing evidence to support the conclusion that Winkelman violated either Rule at issue.

### A. The record contains no clear and convincing evidence of a *knowing* false material statement in violation of Rule 3.3.

Winkelman argued that the record evidence does not show that she violated Rule 3.3 under any of the Panel's five apparent theories. *See* AOB29-48. Disciplinary counsel does not defend any of them. Nor does he argue that any evidence in the record shows that Winkelman in fact "knowingly … ma[d]e a false statement of material fact or law." Pa. R. Pro. Conduct 3.3(a)(1). Disciplinary counsel instead appears to argue that a lawyer may knowingly make a false statement even absent knowledge of falsity. *See* RB32-40.

To start, he apparently concedes that any Rule 3.3 violation rises or falls solely on the April 2019 supplemental brief that stated that the

DAO had "carefully reviewed the facts and law." JA605. Winkelman argued that the Panel erred in faulting her for statements in the February 2019 notice of concession and proposed order given her lack of involvement in either filing. AOB39. Disciplinary counsel does not disagree. *Cf.* RB21 (discussing statements by "the DAO … in February of 2019," but by "Winkelman … in April 2019"). He casually refers to plural "misrepresentations" throughout his brief but does not argue that Winkelman made any statement that violated Rule 3.3 other than the "carefully reviewed the facts and law" statement.

This failure to address the other statements "conce[des]," *In re Bestwall LLC*, 47 F.4th 233, 244 (3d Cir. 2022) (citation omitted), Winkelman's showing that the Panel's other specific "misrepresentation" findings are wholly unsupported (and disproven) by the record. AOB43-49; *see* RB32-40 (mentioning none of them). He also does not dispute that the Panel's adverse credibility findings do not (as a matter of law) show knowing falsity, AOB41-42, or that the Panel's "willful blindness" discussion is unsupported and irrelevant to Rule 3.3, AOB39-41; *see* RB38 (no legal support for application of that doctrine here).

Despite the Rule 3.3 violation rising or falling with the April 2019 supplemental brief, disciplinary counsel does not argue that Winkelman, in April 2019, knew the "careful review" statement in it to be false. He instead vaguely argues that "[*w*]*hatever Ms. Winkelman knew*, she and her office certainly failed to conduct the kind of reasonably diligent inquiry they were expected to conduct in order to comply with the Disciplinary Rules and the applicable law." RB36 (emphasis added). This argument fails legally and factually.

### 1. Rule 3.3 requires actual knowledge of falsity, which disciplinary counsel does not claim to have shown.

A lawyer violates Rule 3.3(a)(1) only when she "knowingly" makes a material misrepresentation. The Rules specify that "'[k]nowingly' … denotes *actual knowledge* of the fact in question." Pa. R. Pro. Conduct 1.0(f) (emphasis added). This Court has accordingly emphasized that Rule 3.3(a)(1) "is violated only when an attorney 'knowingly' makes a false statement." *McCarthy v. DEA*, 171 F.4th 245, 248 (3d Cir. 2026). For example, in *McCarthy*, the Court found no violation for lack of evidence that the attorney had actual knowledge of falsity. *See id.* ("While Attorney misrepresented the legal authorities he cited, it is debatable

whether he knew such statements were false as he failed to read the cases.").

Disciplinary counsel defies the Rule's text and precedent in asserting that "[w]hatever Ms. Winkelman knew," she violated Rule 3.3(a)(1). RB36. According to disciplinary counsel, any "false statement to a court" violates Rule 3.3(a)(1) "if the statement was made 'recklessly.'" RB36. Disciplinary counsel does not attempt to explain how a Rule that requires "actual knowledge" can be satisfied by allegedly "reckless" conduct. It cannot. *See, e.g.*, *Borden v. United States*, 593 U.S. 420, 434 (2021) (a "*mens rea* requirement" of "knowing conduct … excludes reckless conduct").

Disciplinary counsel points to commentary that states that "an assertion purporting to be on the *lawyer's own knowledge*, as in an *affidavit by the lawyer* or in a *statement in open court*, may properly be made only when the lawyer knows the assertion to be true or believes it to be true on the basis of a reasonably diligent inquiry." Pa. R. Pro. Conduct 3.3 cmt. 3 (emphases added). Disciplinary counsel cites no authority to support his implausible assertion that Comment 3 silently substitutes a

recklessness standard for Rule 3.3(a)'s expressly stated actual knowledge standard in all circumstances.

He claims support in two cases, but neither suggests that a "reckless" misstatement violates Rule 3.3(a)(1). *See* RB37. Each applied a recklessness standard only to find violations of *Rule 8.4(c)*, not Rule 3.3(a). *See Off. Disciplinary Couns. v. Surrick*, 749 A.2d 441, 445 (Pa. 2000) (discussing "violation of RPC 8.4(c)"); *Price*, 732 A.2d at 604 ("reckless ignorance of the truth or falsity of the representation" relevant to "violation of Rule 8.4(c)").[2] Unlike Rule 3.3(a), Rule 8.4(c) prohibits "conduct involving … misrepresentation," without specifying any mental state. *That* Rule may be violated by any "culpable mental state greater than negligence." *Off. Disciplinary Couns. v. Anon. Att'y A*, 714 A.2d 402, 407 (Pa. 1998). Meanwhile, Winkelman argued that Rule 8.4 (like Rule 5.1) *does not apply to this case*, AOB40-41—and disciplinary counsel doesn't respond. Unlike those rules, Rule 3.3(a) is violated only when a

[2] *Surrick* did not involve Rule 3.3 at all; it involved two charges under Rule 8.4(c). 749 A.2d at 443 n.2. And *Price*, 732 A.2d 599, discussed Rule 3.3(a) but did not find any violation based on recklessness, nor does its reasoning support the Panel's conclusion here. *See infra* at 13-14 (discussing *Price*).

lawyer "knowingly" makes a material misrepresentation. Disciplinary counsel cites no contrary case.[3]

Disciplinary counsel's cases (and the Comment's plain text) also confirm that Comment 3 is limited to explicit attorney declarations of personal knowledge of facts, such as may be made in pleadings, affidavits, or in open court—not mere factual statements or arguments in briefs.

For example, *Price* involved pleadings in which an attorney falsely *averred* that he was the victim of an unlawful conspiracy by certain individuals. 732 A.2d at 601-02. The *Price* court, citing Pennsylvania pleading requirements, reasoned that the attorney had asserted personal knowledge of the allegations. *See id.* at 603 ("It is well-established … that every court pleading containing an averment of fact not of record is required to state that the assertion is true based upon the pleader's personal knowledge … supported by oath or affirmation[.]" (citing Pa. R.C.P.

[3] Disciplinary counsel also misconstrues *McCarthy* in claiming that this Court "declined to apply the 'reckless' standard to misstatements of law" alone. RB53-54. The Court rejected a recklessness standard for *Rule 3.3(a)* on broader grounds that apply here. *See McCarthy*, 171 F.4th at 248 n.2 ("Because the text of Pa. R.P.C. [3.3(a)] specifies knowing conduct, and because the Pennsylvania Supreme Court has not spoken to specifically say otherwise, we will not adopt a reckless standard here.").

1024, 76)). The testimony and evidence established that the allegations in "court pleadings" were not only false but also based on "no personal knowledge of any wrongdoing," just "on rumors, innuendo, and his own perceptions" of misconduct. *Id.* at 603, 605. Claiming personal knowledge that was lacking thus "violated Rules 3.3(a)(1) and 8.2(b), relating to false statements and accusations." *Id.* at 605-06; *see also Surrick*, 749 A.2d at 443 (lawyer affirmatively represented that he "believed and averred" his false allegations of judges fixing cases).

That reasoning tracks the text of Comment 3, which does not rewrite but rather straightforwardly applies Rule 3.3(a)(1): when a lawyer expressly declares *personal knowledge of a fact*, yet has no basis to claim such knowledge, that lawyer has "knowingly" misrepresented a material fact being claimed—the fact of her knowledge.

Comment 3, however, recognizes that lawyers by default do *not* claim personal knowledge of asserted facts in briefs. *See* Pa. R. Pro. Conduct 3.3 cmt. 3 ("An advocate is responsible for pleadings and other documents prepared for litigation, but is usually *not* required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's

behalf, and not assertions by the lawyer." (emphasis added)). The Comment then explains how Rule 3.3 applies when a lawyer, departing from that norm, expressly claims personal knowledge of a particular fact, "as in an affidavit" or "statement in open court." *See id.*

The charged representation here—that "the District Attorney's Office carefully reviewed the facts and law," JA605—does not declare that statement as known, believed, or averred by Winkelman personally. Nor did Winkelman make her charged statement in a pleading subject to personal knowledge requirements. *See* Pa. R.C.P. 1017 (defining "the pleadings" for purposes of the statutory requirements discussed in *Price*, not including legal briefs); *Del Quadro v. City of Philadelphia*, 437 A.2d 1262, 1263 (Pa. Super. Ct. 1981) ("It is clear that the briefs of the parties are not pleadings." (citing Pa. R.C.P. 1017)); *Erie Indem. Co. v. Coal Operators Cas. Co.*, 272 A.2d 465, 466-67 (Pa. 1971) (distinguishing "facts alleged in the briefs" from those "established by the pleadings"); *Carson v. Borough*, 346 A.3d 390, 396 n.6 (Pa. Commw. Ct. 2025) (similar). Nor does disciplinary counsel claim that Winkelman was individually responsible for the DAO review referenced in the brief. The charged statement

here thus is not "an assertion purporting to be on the lawyer's own knowledge." Pa. R. Pro. Conduct 3.3 cmt. 3.

As a result, the charged statement does not fall into Comment 3's narrow lawyer's personal declaration of knowledge category, but rather falls in the default category of "assertions by the client": here, the DAO. *Cf. id.* 1.13 ("Organization as Client"); *id.* cmt. 6 (discussing attorney-client relationship "when the client is a governmental organization"). Disciplinary counsel's theory would find a "knowing[]" misrepresentation under Rule 3.3 whenever a lawyer representing a government agency (or any other organization) signs a legal brief that discussed conduct by the agency that the signatory had not personally, individually verified, which later proved to be inaccurate. That rule is not a plausible reading of text that prohibits "knowingly" false statements.

Disciplinary counsel's own brief illustrates the dangers of his over-broad theory. The brief includes several false factual assertions:

- It claims "the DAO created" the CCRC "[a]fter *Brown I* was argued but before the opinion was issued." RB14. However, *Brown* was never argued. *Commonwealth v. Brown*, 196 A.3d 130, 141 (Pa. 2018) ("[T]he case was submitted on the briefs

without oral argument.”). There is thus no evidence that the CCRC was created in reaction to developments in *Brown*, as disciplinary counsel suggests. *Contra* RB14-15.

- Disciplinary counsel’s brief contends Winkelman was “responsible for misrepresenting to Judge Goldberg that such communication [with the victims’ family] had occurred,” RB35 n.9, but the Panel expressly found that “George alone misrepresented to Judge Goldberg with respect to the DAO’s communications with the [victim’s] family.” JA530. And disciplinary counsel cites *nothing* for his contrary assertion, besides the notice of concession itself, which does not bear Winkelman’s signature. JA598 ¶9.
- The brief also asserts that “the source for the facts in [George’s] memorandum … was Mr. Wharton’s defense counsel and/or representatives of the Innocence Project.” RB20 n.5 (lacking any citation); *see also* RB43 (asserting that the DAO “had become an ally of … the Innocence Project”; again citing nothing). The Innocence Project does not represent Wharton, and no evidence suggests that it was involved in Wharton’s

case at all—much less as a source for George's memorandum—despite disciplinary counsel asking Winkelman about that organization. *See* JA416-19 at 62:20-65:4.

Disciplinary counsel thus signed a brief that includes factual representations about the subject of his investigation that lack any reasonable factual basis, and that even a cursory examination would reveal to be erroneous. Winkelman does not believe that such misstatements constitute attorney misconduct, but disciplinary counsel's overbroad theory of personal attorney liability would seem to.

Disciplinary counsel reads Rule 3.3 much more expansively than its text can bear. "[K]nowingly" does not mean "recklessly." And disciplinary counsel cites no on-point authority for applying the lower standard here. Yet, he never argues the higher bar of knowledge is met. That requires reversal.

**2. Uncontradicted evidence shows that Winkelman, in 2019, had a reasonable factual basis to believe that the DAO had carefully reviewed the facts and law.**

Disciplinary counsel's argument about Rule 3.3 separately fails as a matter of fact. He does not argue that the record could support a finding that Winkelman actually knew, in April 2019, that the DAO had not

"carefully reviewed the facts and law." JA605. He instead argues that the Court should find culpability because Winkelman supposedly lacked *any* "reasonable factual basis" to believe that statement. RB37 (quoting *Surrick*, 749 A.2d at 444). The record refutes that assertion.[4]

Winkelman's opening brief surveyed the record evidence showing her reasonable factual basis to believe that the DAO had "carefully reviewed the facts and law." JA605. "[U]ncontradicted evidence shows that George would review the records of prior proceedings and the defendant's criminal record, decide which cases warranted CCRC review, and then present his findings on those cases to the CCRC." AOB33 (citing JA373 at 19:16-21; JA378 at 24:1-7, 24:15-18). "A June 2018 email from George,

[4] Disciplinary counsel thus seems to concede that the Panel erred in concluding that "Winkelman necessarily knew" from this Court's 2018 remand order "that there was anti-mitigation evidence that the CCRC, in its 'careful review,' never considered." JA526. Disciplinary counsel does not deny that "the record lacks any evidence about Winkelman's contemporaneous knowledge of that order," and that the Panel erred in inferring *contemporaneous* knowledge from testimony about "Winkelman's *current* understanding of the remand order." AOB35-36 (emphasis added); *see also* AOB47. Disciplinary counsel at times repeats the Panel's error. *See, e.g.*, RB20 n.5 ("Nevertheless, she sat through the [November 2018] meeting and never raised the anti-mitigation evidence that she knew this Court had ordered the District Court to consider on remand." (citing nothing)). But he relies on these unsupported assertions only to take passing swipes at Winkelman; he tellingly does *not* argue that any record evidence supports his assertions of actual knowledge.

on which Winkelman is copied," explains that George's review "included 'reported opinions of appellate courts,' 'mitigation packets submitted by defense counsel,' and '[o]ther information, such as the names and whereabouts of the victim's family,' and 'the criminal history of the defendant.'" AOB34 (quoting JA319). And Winkelman thus testified "that, at the time she edited the supplemental brief in 2019, Winkelman understood the CCRC's process to be careful." AOB32 (citing JA403 at 49:3-18). The Panel did not discount any of that evidence or discredit any of that testimony.

Nor does disciplinary counsel dispute it on appeal. To the contrary, he acknowledges that Winkelman relied on George's factual review of cases. *See* RB15; RB18 n.4.[5] And he does not "suggest that it was

[5] Disciplinary counsel oddly accuses "Winkelman's appellate counsel" of newly arguing that Winkelman reasonably "relied on her subordinate" in believing that the DAO's review had been careful. *E.g.*, RB40 n.10. Winkelman consistently made the same argument below. *See, e.g.*, JA312-14 (pre-hearing brief); JA503-05 (post-hearing brief); JA547-49 (objections to R&R). Disciplinary counsel disagrees, but he cites only Winkelman taking general responsibility for DAO errors, such as by testifying that "[a]s the supervisor of the Law Division, I think the buck stops with me." RB28-29 (quoting JA110 at 20:22-23). Winkelman taking managerial responsibility for institutional errors does not show that her conduct violated any relevant Rule, nor does it contradict her argument that she reasonably believed her subordinate's review was careful.

unreasonable for Winkelman, as George's supervisor, to generally rely on his factual review rather than her own independent inquiry and investigation." AOB36-37.

Disciplinary counsel does not cite any record evidence to contradict Winkelman's; indeed, he hardly cites the record at all, and never to support an assertion about Winkelman's knowledge in April 2019. *See* RB32-40. The uncontradicted evidence thus establishes a reasonable factual basis—Winkelman's understanding of what the CCRC's review process entailed, including George's review of the record—for Winkelman to believe that the DAO had "carefully reviewed the facts and law" in Wharton's case. That distinguishes this case from disciplinary counsel's only cited case finding a violation of Rule 3.3 on his theory. *See Price*, 732 A.2d at 604 (Price "presented no evidence establishing a factual basis" at all).

Ignoring Winkelman's evidence, disciplinary counsel instead levels his fire at a strawman, pretending that Winkelman claimed ignorance of the DAO review process as a defense. *See* RB36 ("With regard to representations of this kind, it is not sufficient to say 'I didn't know what the truth was' if you never conducted a reasonably diligent inquiry to find

out."); RB33 (similarly asserting Winkelman "argue[d] that 'I really didn't know what my office had done'"). But Winkelman never argued that she was ignorant of the process. Instead, she reasonably understood that process to be thorough, and there are no facts in the record to show that her reliance was objectively unreasonable. Disciplinary counsel cites no such evidence. *See, e.g.*, RB38 (asserting that "Winkelman's eyes were deliberately closed to the fact that no careful review had been done," but citing nothing).

To the extent that disciplinary counsel develops an argument about the record, it does not support his claim that Winkelman lacked any factual basis for the "careful review" statement in April 2019. Instead, he mostly dwells on what he calls a DAO "policy" of conceding relief in capital cases. *See* RB32-33. There is no record evidence of a "policy" in the sense that he implies—a protocol to automatically concede relief in all capital cases without any case-specific review. *See* AOB44-46.

The record shows the DAO frequently conceding relief in capital cases. However, a pattern of outcomes does not prove a lack of preceding consideration of individual circumstances. *Cf., e.g.*, *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991) (where "a statutory scheme requires

individualized determinations," an agency still may consistently apply "general principles" across cases); *United States v. Williams*, 458 F.3d 312, 320 (3d Cir. 2006) (reasoning that "a judge may be less lenient towards certain types of crimes" without violating duty of "individually considering the facts of each case"); *Burnette v. Fahey*, 687 F.3d 171, 183 (4th Cir. 2012) (board's consistent denial of parole to inmates convicted of violent offenses did not support inference that board was "failing to consider each [i]nmate individually"); *Rokita v. Pa. Dep't of Corr.*, 273 A.3d 1260, 1269 (Pa. Commw. Ct. 2022) (incarcerated plaintiff stated claim not by alleging general policy, but by alleging lack of "any individualized consideration of [his] circumstance to determine whether a departure from [that] policy may be warranted"). The *only* fact that disciplinary counsel cites to support his argument is that Winkelman "could offer no example of the policy not being followed"—i.e., that she did not identify another case where the DAO had defended a capital sentence after CCRC review. RB33 (citing JA461 at 107:7-12). A lack of evidence of a contrary

outcome in some other case does not support any inference of a lack of individualized review in this one.[6]

This misplaced focus on the supposed "policy" perhaps reflects disciplinary counsel's, and the Panel's, broad disagreement with the DAO's approach to capital cases in general. But it does not support—let alone with record evidence—that Winkelman actually knew, in April 2019, that no one in the DAO had carefully reviewed the facts and law applicable to Wharton's case. Disciplinary counsel only reinforces the lack of such evidence by deflecting to objections about Winkelman's conduct in the years *after* she signed the supplemental brief. *See* RB38-40.

### B. The record lacks clear and convincing evidence to support the conclusion that Winkelman raised a "frivolous" claim in violation of Rule 3.1.

Winkelman showed that the Panel failed to adequately support its conclusion that she violated Rule 3.1 under the governing legal standard. AOB49-52. Disciplinary counsel barely responds, treating this Rule as

---

[6] Disciplinary counsel also concedes that Winkelman's "reluctance to call it a 'policy' was perhaps a matter of semantics." RB53. This supports, rather than contradicts, Winkelman's argument against the Panel's finding that her reluctance to adopt that label at the hearing was false testimony. AOB44.

an afterthought and failing to cite any legal authority or the record in his brief section on the topic. *See* RB41-45.

That omission violates appellate briefing requirements. *See* Fed. R. App. P. 28(a)(8)(A) ("the argument … must contain … appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *id.* 28(b) (an "appellee's brief must conform to the [same] requirements"); 3d Cir. Loc. R. 28.3(c) ("All assertions of fact in briefs must be supported by a specific reference to the record."). This Court has "consistently refused to consider" such forfeited arguments, *Barna v. Bd. of Sch. Dirs. of Panther Vall. Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017), including when appellees violate these rules, *Frank v. Colt Indus., Inc.*, 910 F.2d 90, 100-01 (3d Cir. 1990). Here too, the Court should decline to consider disciplinary counsel's forfeited argument. The choice to cite nothing—not even Winkelman's supposedly frivolous argument, or the source of law that supposedly rendered it frivolous—impedes Winkelman's response and this Court's review. That is reason alone to reverse the Rule 3.1 violation.

Nor can that conclusion stand on the merits. To start, disciplinary counsel wholly abandons the R&R's stated reasoning. *Compare* RB41-44

(solely discussing purported argument about "deference"), *with* JA528-29 (not discussing any such argument in section on Rule 3.1). As Winkelman argued, and disciplinary counsel does not rebut, it is the frivolity of the legal position asserted that is the relevant question, not Winkelman's other conduct. AOB49-52. Here, the issue (according to the Panel) was seeking relief on Wharton's behalf. Yet, disciplinary counsel concedes that relief was not frivolous, even if it was ultimately unsuccessful. RB41-42.

Diverging from the Panel's reasoning, disciplinary counsel appears to argue that the April 2019 supplemental brief included a "'deference' argument that was frivolous" under *Commonwealth v. Brown*, 196 A.3d 130 (Pa. 2018). RB42. To show this new and unsupported violation of Rule 3.1, however, disciplinary counsel would need to show that *Brown* unambiguously foreclosed the purported "deference" argument so conclusively that the argument lacked "**any** basis in law or fact." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1190 (Pa. 2011) (emphasis in original); *see also McKnight v. Gen. Motors Corp.*, 511 U.S. 659, 660 (1994) (reversing imposition of sanctions where law "was not so clear as to make petitioner's position frivolous"). Courts rarely deem arguments frivolous in

evolving areas of the law. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987).

Disciplinary counsel emphasizes that the DAO had previously argued that the law required courts to "defer" to its concessions, and that "that was no longer a tenable legal argument" after *Brown*. RB42. But he admits that Winkelman never argued, after *Brown*, that "deference to the DAO's judgment was … required." RB42. He objects only to a purported argument that the DAO's "judgment was still entitled to great weight and that, in this case, because the DAO had conducted a careful review of the facts and law, the judge could simply defer to what the DAO had done." *Id.* His contention fails factually and legally.

Factually, disciplinary counsel mischaracterizes the DAO's April 2019 supplemental brief. That brief made two arguments, as directed by Judge Goldberg. *See* AOB12-14; AOB50-51.[7] First: "A prosecutor is ethically obligated to concede relief when the prosecutor believes that justice so requires; in this situation, a court may, *but is not required*, to accept

[7] This Court has cautioned that finding frivolousness too readily would "chill effective advocacy." *Gaiardo*, 835 F.2d at 485. The district court here *invited* the DAO to advocate for its views on two specific questions. It would be especially chilling, if not absurd, to find frivolousness based on disagreement with the views advocated in a court-requested response.

that concession." JA603 (emphasis added). Second: "If the record is insufficient to rule on the remaining claim, the Court can conduct an evidentiary hearing." JA607. Neither argument demands that the court simply "defer"; the brief never even uses that word. *Contra* RB42 (placing "deference" in quotation marks with no citation to the record); RB44 (same with word "defer").

The brief expressly recognizes Judge Goldberg's exclusive authority to determine Wharton's entitlement to relief. It states that "a court may, *but is not bound to*, accept [a prosecutor's] concession." JA607 (emphasis added).[8] The brief states that the DAO "ha[d] no opposition to the Court holding an evidentiary hearing" if Judge Goldberg deemed one necessary for him to "independently evaluate the merits." JA607 (citation omitted).

Nor does the brief urge Judge Goldberg to defer to the concession "*because* the DAO had conducted a careful review of the facts and law." *Contra* RB42 (emphasis added). The brief refers to "careful review" only to introduce a *Strickland* argument: "Here, the District Attorney's Office

---

[8] And the reference to "great weight" given to the "judgment of [] law enforcement officers" is a direct quotation of Supreme Court precedent, immediately preceding the statement that the court "may" but need not accept the concession. JA607 (quoting *Young v. United States*, 315 U.S. 257, 258-59 (1942)).

carefully reviewed the facts and law and determined that Wharton's ineffectiveness claim fulfills the criteria articulated in Strickland v. Washington, 466 U.S. 668 (1984)." JA605. The brief then specifies the basis for that determination: legally, this Court's application of a de novo standard; and factually, Wharton's counsel's declaration and the jury's initial deadlock. JA605-06. The brief thus identifies particular law and facts, not the carefulness of the DAO's own process, as the basis for Judge Goldberg to grant or deny the requested relief. The brief on its face does not demand deference as disciplinary counsel claims.

Legally, disciplinary counsel's argument fails because nothing in the supplemental brief contradicts *Brown*. The decision holds "that a district attorney's concession of error is not a substitute for independent judicial review," and that a prosecutor therefore cannot "instruct a court to undo the verdict without all necessary and appropriate judicial review." *Brown*, 196 A.3d at 146. But the April 2019 supplemental brief, again, stated that "a court may, but is not bound to, accept [a prosecutor's] concession"; acknowledged the district court's stated need to "independently evaluate the merits"; and stated that the DAO had "no opposition to the Court holding an evidentiary hearing" if necessary to make

that independent evaluation. JA607. None of that urges Judge Goldberg to eschew independent judicial review or instructs him to do anything.

* * *

In sum, disciplinary counsel's attempts to rehabilitate the Panel's holding that Winkelman violated Rule 3.3 or 3.1—largely with arguments not adopted by the Panel—all fail as a matter of law or fact. So, this Court should reverse on the merits.

## III. The Panel erred by acting first as adversary at the hearing, then as adjudicator in the district court's final decision.

Like much of the rest of his brief, disciplinary counsel's due process section responds to an argument that Winkelman never made and fails to respond to the arguments she does make. Winkelman did not argue that the Panel was categorically prohibited from independently developing a factual record or adopting an adversarial stance against her (RB44-46), or that the Panel possessed actual "bias" (RB47), or that the district court's default procedure (three-judge panel reviewed by full court) violates due process (RB47-50 & n.14). In pretending otherwise, disciplinary counsel addresses only strawmen—and cross-references his brief in George's case, which also contains non-sequitur arguments. *See* RB48 (citing Resp. Br. at 22-25, *In re George*, No. 25-3264 (3d Cir. Apr. 30,

2026), Dkt. 41 (arguing that the district court's default procedure does not violate due process, *id.* at 22-25; and that the Panel was not biased against George, *id.* at 25)).

Winkelman argued that *because* the Panel chose to perform the functions of an advocate at the hearing, due process *then* required it to recuse from later adjudicating the same case. AOB52-61. Put simply, the same judge cannot "serve as both accuser and adjudicator." AOB54 (quoting *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016)). Yet, disciplinary counsel never addresses why *Williams*—or its underlying principle—does not apply to *this case*. In fact, he never even cites *Williams*.

To the extent that disciplinary counsel responds at all, he confirms rather than refutes the Panel's uniquely adversarial involvement in the hearing. Disciplinary counsel does not deny that the Panel used its own "script" to extensively question Winkelman about a wide range of subjects, such as unrelated DAO employees and the DA's personal criticisms of his predecessors, with no apparent relevance to Winkelman's charged conduct. AOB54-58. Disciplinary counsel argues that it was a good thing that the Panel had prior impressions about "what the DAO was up to" and ventured beyond the factual record developed by the parties. *See*

RB45-47. Yet, he does not explain how the Panel taking it upon itself to broadly investigate and prosecute perceived institutional wrongs would be consistent with neutrally adjudicating charges of individual misconduct.

Disciplinary counsel also does not deny that if the Panel did function as an advocate at the hearing, that would give rise to an "unconstitutional potential for bias" that required its recusal from the final decision. AOB53-54, AOB57-58 (quoting *Williams*, 579 U.S. at 8). Disciplinary counsel does not address the clear example of the Panel judging its own case, when it overruled an objection to the scope of its own questioning. AOB58-59. Even still, Winkelman did not challenge the Panel's initial adjudication of the propriety of that questioning—only the district court's failure to ensure that a neutral arbiter (i.e., a non-advocate) reviewed that objection before imposing the sanctions. AOB60. The Panel's "failure to recuse" upon the unconstitutional potential for bias "constitutes structural error." *Williams*, 579 U.S. at 14. Disciplinary counsel does not address it at all—and thus effectively concedes this independent basis for relief.

## CONCLUSION

The Court should reverse.

Dated: November 12, 2026

Respectfully submitted,

s/ *Eric W. Sitarchuk*

ERIC SITARCHUK
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000

JAMES D. NELSON
ANDREW R. HELLMAN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 739-3000

*Counsel for Nancy Winkelman*

## COMBINED CERTIFICATES OF COMPLIANCE

In accordance with Local Appellate Rules 28.3(d) and 46.1(e), I certify that all attorneys whose names appear on this brief are members in good standing of the bar of this Court or have filed an application for admission.

In accordance with Local Appellate Rule 31.1(c), I certify that the texts of the electronic brief and paper copies are identical and that Microsoft Defender Offline scanned the file and did not detect a virus.

In accordance with Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,473 words, according to the word count of Microsoft Word 365. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in Century Schoolbook 14-point font, a proportionally spaced typeface.

Dated: November 12, 2026

s/ Eric W. Sitarchuk
ERIC W. SITARCHUK